UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHAYNA BAYONNE,

    **Plaintiff,**

vs.                                                    **CASE NO.:**

EMORY UNIVERSITY,

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SHAYNA BAYONNE ("Plaintiff"), by and through her undersigned counsel brings this action against Defendant EMORY UNIVERSITY ("Defendant" or "Emory"), and states as follows:

## NATURE OF CASE

1. Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101 *et seq* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq*.

## ADMINISTRATIVE PROCEDURES

2. Plaintiff has fulfilled all conditions necessary to proceed with this cause of action. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against EMORY UNIVERSITY, on October 17, 2024.

3. The EEOC issued its Notice of Right to Sue on June 24, 2025.

4. Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## JURISDICTION AND VENUE

5. Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. § 12101 *et seq.*, 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117.

6. This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b), because all of the parties reside within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in the judicial district.

## PARTIES

7. Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*, in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her request for FMLA.

2

8. Plaintiff is a citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under the ADAAA at 42 U.S.C. § 12111(4).

9. Plaintiff, at all times revenant hereto, was an individual with a disability as the term is defined under 42 U.S.C. § 12102(1).

10. Plaintiff is a person with a disability as she has an impairment causing substantial limitations in one or more major life activities, she has a record of disability, and because Defendant regarded her as having an impairment.

11. Defendant is a Georgia Domestic Nonprofit Corporation who may be served with summons and process by service through its registered agent, C T Corporation System, at 289 S Culver Street, Lawrenceville, Georgia, 30046.

12. During all times relevant hereto, Defendant Emory University has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the ADAAA and the FMLA. Defendant is therefore covered under the ADAAA in accordance with 42 U.S.C. § 12111(5) and the FMLA in accordance with 29 U.S.C. § 2601 *et seq*.

13. During all times relevant hereto, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District and is within the jurisdiction of this Court and this District.

14. Defendant may be served by delivering a copy of the summons and complaint through its registered agent, Amy Adelman, at 201 Dowman Drive, 312 Administration Building, Atlanta, GA, 30322.

15. Defendant is now and, at all times relevant hereto, has been a Domestic Nonprofit Corporation.

## STATUTORY PREREQUISITES

16. At all times material hereto, Plaintiff suffered from Long-COVID (LC-19), a recognized disability under the ADAAA.

17. Plaintiff is an individual who suffered discrimination based on her disability.

18. Plaintiff is a member of a class of individuals protected by ADAAA.

19. Plaintiff was qualified for the position she was hired as a Preschool Teacher.

20. The Defendant meets the statutory criteria for coverage as an "employer" under the ADAAA.

21. Plaintiff meets the statutory criteria for coverage as an "employee" under the ADAAA.

22. Plaintiff timely filed her Charge of Discrimination with the EEOC on October 17, 2024.

23. On June 24, 2025, the EEOC issued its Notice of Right to Sue. Therefore, this Complaint is being filed within ninety (90) days of Plaintiff receiving her right-to-sue letter.

24. Accordingly, Plaintiff has complied with all other requirements and all other prerequisites prior to bringing this lawsuit.

## FACTUAL ALLEGATIONS

25. Plaintiff was hired by Defendant on or about February 7, 2022, as a preschool teacher.

26. Specifically, Plaintiff was hired by Defendant to work at Emory Autism Center's Early Emory Inclusive Preschool and Pre-K facility.

27. Plaintiff performed her job duties satisfactorily and had no history of disciplinary, attendance, or performance issues during her employment.

28. In or around July 2023, Plaintiff's husband, Emmanuel Bayonne, developed a serious health condition requiring regular medical care and assistance, including transportation to doctor's appointments.

29. Plaintiff informed the Defendant's Director of Educational Services, Catey Funaiock, of her husband's condition. In response, Funaiock recommended that Plaintiff apply for leave under the FMLA.

30. On or about July 5, 2023, Plaintiff submitted documentation to the Defendant's Human Resources department to request FMLA leave in order to care for her husband.

31. Despite Plaintiff's submission of the required paperwork, the Defendant's HR personnel, Allegra (last name unknown), later claimed that Plaintiff had failed to submit all necessary documentation.

32. Plaintiff requested a meeting with Allegra to address this issue. At the meeting, Allegra maintained that Plaintiff's documentation was incomplete. Plaintiff, nonetheless, immediately resubmitted the documents.

33. The Defendant never responded further to Plaintiff's FMLA request, and her leave was effectively denied, preventing her from taking the necessary time off to care for her husband.

34. On or about February 27, 2024, Plaintiff tested positive for COVID-19.

35. Plaintiff continued to suffer symptoms from COVID-19 well beyond the expected recovery period, including chronic fatigue and shortness of breath, constituting Long-COVID (LC-19), a recognized disability under the under the ADAAA.

36. Plaintiff promptly informed the Defendant of her COVID-19 diagnosis and ongoing symptoms. Per the Defendant's policy, Plaintiff was scheduled to return to work on March 5, 2024.

6

37. On March 4, 2024, Plaintiff sought treatment from Piedmont Physicians due to her ongoing symptoms. She was advised by a medical provider to take an additional three days of rest due to health concerns.

38. Plaintiff immediately communicated this update and submitted a doctor's note to Defendant HR personnel Ashley Davenport and to Catey Funaiock and Funaiock acknowledged that the additional leave would not be a problem.

39. Plaintiff returned to work on March 7, 2024, but continued to experience periodic symptoms associated with Long-COVID over the following weeks.

40. On Sunday, April 21, 2024, Plaintiff brought her husband to the hospital due to complications from his medical condition. She notified Funaiock of the situation.

41. Plaintiff worked her scheduled shift on April 22, 2024.

42. On April 23, 2024, Plaintiff received a call from her husband, who required immediate transport to Piedmont Rockdale Hospital. Plaintiff informed Funaiock of the emergency and accompanied her husband to the hospital, where she stayed overnight.

43. Plaintiff was unable to work her scheduled shift on April 24, 2024. Prior to calling out, she confirmed with Funaiock that her absence would be excused upon submission of a doctor's note.

7

44. Plaintiff submitted the doctor's note as requested, which confirmed her presence at the hospital and indicated her return-to-work date of April 25, 2024.

45. Despite providing appropriate documentation, on April 26, 2024, Funaiock emailed Plaintiff stating that her April 24 absence would be marked as "unexcused" and count as an "occurrence."

46. In the same email, Funaiock revisited the idea of FMLA leave and claimed the Defendant's HR department could not process Plaintiff's request due to incomplete paperwork. Plaintiff was confused, as her prior request was submitted in July 2023 and had not been processed properly.

47. In good faith, Plaintiff began compiling documentation to reinitiate the FMLA request.

48. On April 30, 2024, Plaintiff informed lead teacher Nicole Gonzalez that she was expecting a call regarding her husband's medical condition and might briefly step away from her classroom. Gonzalez assured her this would not be an issue.

49. That same day, Plaintiff also attended a medical appointment for symptoms related to a stomach virus and Long-COVID.

50. On May 1, 2024, Plaintiff was called into a meeting with Funaiock and Operations Director Miche'l Jones. During this meeting, Plaintiff was informed that her employment was being terminated.

8

51. Plaintiff later received a written separation notice citing violations of "Emory Policy 4.62, Standards of Conduct," with the stated reasons being "reoccurring issues in areas of professionalism, excessive phone usage, and safety."

52. Prior to this meeting, Plaintiff had not received any warnings or discipline related to professionalism, phone usage, or safety.

53. In fact, on March 5, 2024, Funaiock praised Plaintiff's work performance in writing, commending her for being the first individual in her department to complete and upload required training documentation.

54. Plaintiff consistently sought and obtained approval before using her phone at work, including the instance on April 30, 2024, when she informed Gonzalez in advance.

55. The reasons given for Plaintiff's termination were pretextual and not grounded in fact.

## COUNT I
## DISCRIMINATION UNDER THE ADAAA

56. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

57. Plaintiff suffers from a disabling medical condition pursuant to the ADAAA.

58. Plaintiff was discriminated against by the Defendant due to her disability in violation of federal law.

59. Defendant failed to engage in the interactive process to determine whether any accommodation could be given to Plaintiff without creating an undue hardship to Defendant.

60. Defendant denied Plaintiff a reasonable accommodation as required by federal law.

61. Plaintiff is protected by the ADAAA:

   a. Plaintiff was a disabled or a "perceived as disabled" employee who suffered discrimination because of her disability or "perceived disability" by Defendants; and

   b. Plaintiff suffered an adverse employment action as a result of her disability or "perceived disability."

62. Defendant was at all material times an "employer" as envisioned and defined by the ADAAA.

63. Plaintiff's medical condition is a protected disability under the ADAAA, as amended. *See* 42 U.S.C. § 12102.

64. Defendant's actions unquestionably constitute disability discrimination in violation of the ADAAA, as amended.

65. By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADAAA.

66. Alternatively, Defendant perceived Plaintiff as being "disabled," and therefore, unable to perform the essential functions of her position, even though Plaintiff could perform same with a reasonable accommodation.

67. Pleading in the alternative, Plaintiff's disability does not substantially limit a major life activity but was treated by Defendant as if it did.

68. Defendant does not have a non-discriminatory rationale for denying Plaintiff's employment.

69. Plaintiff was a disabled individual, or otherwise perceived as disabled by Defendant. Therefore, she is a member of a protected class as envisioned and defined by the ADAAA.

70. Plaintiff suffered sufficiently severe and pervasive treatment because of her disability and/or "perceived disability," and request for accommodation regarding same.

71. The acts of Defendant, by and through their agents and employees, violated Plaintiff's rights against disability discrimination under the ADAAA.

72. The discrimination to which Plaintiff was subjected was based on her disability and/or "perceived disability."

73. The conduct of Defendant, their agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

75. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADAAA.

## COUNT II
## RETALIATION UNDER THE ADAAA

76. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

77. Plaintiff suffers from a disabling medical condition pursuant to the ADAAA.

78. Defendant was aware of Plaintiff's disabling medical condition.

79. Defendant received notice of Plaintiff's disabling medical condition from her physician no later than March of 2024.

80. Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

81. Defendant denied Plaintiff's reasonable accommodation request in violation of federal law.

82. Defendant terminated Plaintiff's employment, in whole or in part, because of her disabling medical condition.

83. Plaintiff was retaliated against by the Defendant due to her disability and/or "perceived disability" in violation of federal law.

84. Defendant's proffered reasons for terminating Plaintiff's employment are mere pretext designed to hide Defendant's retaliatory motive.

85. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

86. The conduct of Defendant, its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

87. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendants to deter it, and others, from such conduct in the future.

88. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADAAA.

## COUNT III
## INTERFERENCE WITH EXERCISE OF FMLA RIGHTS

80. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

81. Defendant is an 'employer' as defined by the FMLA.

82. Plaintiff was an eligible employee under the FMLA.

83. Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

84. Plaintiff was employed by Defendant for more than 12 months.

85. Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

86. Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, *et seq*.

87. Plaintiff husband had a medical condition as defined by the FMLA.

88. Plaintiff was an eligible employee with a spouse with a health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 C.F.R. 825.113.

89. The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to her solely because of her right to leave under the FMLA.

90. As a result, Plaintiff is entitled to both equitable and monetary relief for

Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

91. Plaintiff is also entitled to liquidated damages for Defendant's violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii) because Defendant's actions to prevent Plaintiff from taking additional leave were willful violations of the FMLA.

## COUNT IV
## RETALIATION FOR EXERCISE OF FMLA RIGHTS

92. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

93. Defendant is an 'employer' as defined by the FMLA.

94. Plaintiff was an eligible employee under the FMLA.

95. Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

96. Plaintiff was employed by Defendant for more than 12 months.

97. Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

98. Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, *et seq*.

99. Plaintiff spouse had a medical condition as defined by the FMLA.

100. Plaintiff was an eligible employee with a spouse with a serious health

condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 C.F.R. 825.113.

101. In terminating Plaintiff's employment, Defendant retaliated against Plaintiff for exercising her right to take leave as provided under the FMLA.

102. Defendant's actions in retaliation against Plaintiff for refusing her FMLA and terminating her employment were committed with reckless disregard for Plaintiff's right to be free from discriminatory treatment under the FMLA, specifically 29 U.S.C. §2615(a)(1)(2).

103. The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to her under the FMLA.

104. As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B).

105. Plaintiff is further entitled to liquidated damages for Defendant's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

**WHEREFORE**, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the ADAAA and the FMLA;

b.  General damages for mental and emotional suffering caused by Defendant's misconduct;

c.  Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

d.  Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

e.  Reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the ADAAA and the FMLA;

f.  Trial by jury as to all issues;

g.  Prejudgment interest at the rate allowed by law; and

h.  All other relief to which she may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: September 22, 2025

Respectfully submitted,

*/s/Jordan Rose, Esq*
Anthony J. Hall, Esq.
GA Bar No. 318028
Jordan Rose, Esq.
GA Bar No. 851471
THE LEACH FIRM, P.A.
1560 N. Orange Avenue, Suite 600
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (321) 594-7316

       Email: ahall@theleachfirm.com
       Email: jrose@theleachfirm.com
       Email: aperez@theleachfirm.com
       Email: ppalmer@theleachfirm.com
       ***Attorneys for Plaintiff***